**LINK: 212**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CITY OF LOS ANGELES, et al., | ) | **Case No. CV 06-5094 GAF (VBKx)** |
| Plaintiffs, | ) | |
| v. | ) | **ORDER REGARDING INDIVIDUAL PLAINTIFFS' THIRD MOTION FOR ATTORNEY'S FEES** |
| COUNTY OF KERN, et al., | ) | |
| Defendants. | ) | |

**I.**

**INTRODUCTION**

This case involved a challenge by Plaintiffs City of Los Angeles and others to a biosolids ban ordinance ("Measure E") implemented by Defendant County of Kern. On August 10, 2007, this Court held, in relevant part, that Measure E violated the Commerce Clause of the U.S. Constitution and was preempted by the California Integrated Waste Management Act, and accordingly entered summary judgment for Plaintiffs on these claims. (See 8/10/07 Order [Docket No. 182] at 55.) On September 5, 2007, the Court entered final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure in favor of Plaintiffs, declared Measure E null and

1 void, and permanently enjoined the enforcement or implementation of Measure E.
2 (See 9/5/07 Judgment [Docket No. 193] at 2.)
3   In an October 25, 2007 Order, this Court found that as "prevailing parties,"
4 Plaintiffs Responsible Biosolids Management, Inc., R&G Fanucchi, Inc., Sierra
5 Transport, Inc., Shaen Magan (individually and d/b/a Honey Bucket Farms and Tule
6 Ranch/Magan Farms), and Western Express, Inc. (collectively, "Individual Plaintiffs")
7 were entitled to move for attorney's fees pursuant to 42 U.S.C. § 1988. (10/25/07
8 Order [Docket No. 205] at 4.) Accordingly, the issue of whether Individual Plaintiffs
9 are entitled to attorney's fees is not in dispute and Defendants do not argue to the
10 contrary. In the October 2007 Order, however, the Court denied Individual Plaintiffs'
11 Renewed Motion for Attorneys' Fees, without prejudice, for their failure to provide
12 sufficiently specific evidence—the number of hours reasonably expended or the
13 reasonable hourly rates of their attorneys—to support their requested attorney's fees
14 and corresponding costs.[1]
15   Individual Plaintiffs then filed their Third Motion for Attorneys' Fees, which
16 encompasses claims relating to work performed by three groups of attorneys.
17 (Docket No. 214.) The Court granted solo practitioner Michael J. Lampe's unopposed
18 request for attorney's fees in the amount of $21,050.50, and corresponding costs of
19 $229.75. (Docket No. 241 [5/15/08 Order] at 2.) The Court, however, requested
20 further briefing from the two remaining groups of attorneys—law firms Bingham
21 McCutchen LLP ("Bingham") and Beveridge & Diamond, P.C. ("Beveridge")—because
22 their submitted invoices were disorganized and the Court could not determine whether
23 the requested fees were, among other things, duplicative or excessive. Bingham and
24 Beveridge have since submitted the requested further briefing. (Docket Nos. 253
25 [Second Supp. Bruner Decl.], 254 [Second Supp. Slaughter Decl.], respectively.)
26

---

[1] Individual Plaintiffs had first moved for attorney's fees in December 2006. (Docket No. 88 [12/6/06 Motion for Attorney's Fees].)

1       Bingham and Beveridge have grouped their requested fees into one of nine
2  categories: (1) preparing the Complaint; (2) document retrieval and management; (3)
3  opposing Defendants' motion to dismiss; (4) drafting the preliminary injunction motion;
4  (5) defending against intervener motions; (6) preparing and opposing cross-motions
5  for summary judgment; (7) preparing the motions for attorney's fees; (8) discovery
6  work; and (9) miscellaneous matters.  Bingham requests attorney's fees in the amount
7  of $659,264.00, and Beveridge seeks fees in the amount of $1,321,711.00.  Bingham
8  and Beveridge also request costs in the amount of $77,351.49.  (See Bruner Decl.,
9  Ex. B [Bingham Costs Chart]; Slaughter Decl., Ex. D [Beveridge Cost Chart]; see also
10 Second Supp. Slaughter Decl. ¶ 4 (requesting additional $148.59 in costs).)
11      For the reasons discussed below, the Court **GRANTS** Bingham's and
12 Beveridge's motion for attorney's fees, but awards substantially less than the
13 requested amounts.  While the Court does not take issue (nor do Defendants) with
14 Plaintiffs' requested blended rates of $395 (Bingham) and $380 (Beveridge), the Court
15 concludes that the hours spent by Individual Plaintiffs' counsel in prosecuting this
16 action were grossly excessive.  For example, Bingham spent 228.90 hours and
17 Beveridge spent 509.70 hours (for a total of 738.60 hours) "preparing" the 29-page
18 Complaint.  In contrast, Defendants' counsel spent 764.20 hours in total defending
19 this case.  (Hogan Decl. ¶ 7.)  See Democratic Party of Washington State v. Reed,
20 388 F.3d 1281, 1287 (9th Cir. 2004) (noting that, while not dispositive, "one
21 particularly good indicator of how much time is necessary" for an attorney to spend on
22 a case is to compare it with "how much time the other side's lawyer spent").[2]  Where a
23 Court establishes that charges are excessive, the Ninth Circuit provides that a court
24 need not analyze each time entry, but may instead reduce an attorney's fee request
25 by a flat percentage.  Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992)
26
27   [2]As Defendants had other counsel (i.e., Kern County's counsel) working on the case, the total
     hours worked by Defendants' collective counsel is higher than those worked only by Hogan's
28   firm.

1  (holding that (1) while a district court must provide a clear explanation of an attorney's
2  fee award, it has the authority to make percentage cuts in the number of hours
3  claimed or final lodestar figure as a practical means of "trimming the fat" from a fee
4  application; and (2) the court is not required to set forth an hour-by-hour analysis of a
5  voluminous fee application).  Accordingly, the Court reduces the requested fees by
6  the percentages outlined below.  Having taken these reductions into account, the
7  Court **GRANTS** Bingham a revised attorney fee award of $455,276.32 and **GRANTS**
8  Beveridge a revised attorney fee award of $627,211.95.  Furthermore, the Court
9  **DENIES** Bingham's and Beveridge's request for corresponding costs, as it is not
10  supported by sufficient evidence.

11                                      **II.**
12                                 **DISCUSSION**
13  **A.  LEGAL STANDARD**
14          A district court may award reasonable attorney's fees to a prevailing party in
15  a civil rights action.  42 U.S.C. § 1988.  The starting point for determining the amount
16  of a reasonable fee is the number of hours reasonably expended on the litigation
17  multiplied by a reasonable hourly rate.  This "lodestar" calculation provides an
18  objective basis upon which to make an initial estimate of the value of a lawyer's
19  services.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The court may reduce the
20  lodestar amount by deducting hours which were not "reasonably expended."  Id. at
21  434.  The number of hours that is "reasonable" must be determined according to the
22  facts of each case.  Id. at 429.
23          "The fee applicant bears the burden of documenting the appropriate hours
24  expended in the litigation and must submit evidence in support of those hours worked.
25  The party opposing the fee application has a burden of rebuttal that requires
26  submission of evidence to the district court challenging the accuracy and
27  reasonableness of the hours charged or the facts asserted by the prevailing party in
28  its submitted affidavits."  Gates v. Rowland, 39 F.3d 1439, 1449 (9th Cir. 1994)

1  (quoting Deukmejian, 987 F.2d at 1397-98).  Prevailing parties are obligated to
2  exercise "billing judgment" to exclude from their fee requests any hours that are
3  excessive, redundant, or otherwise unnecessary.  Hensley, 461 U.S. at 434 ("Hours
4  that are not properly billed to one's client also are not properly billed to one's
5  adversary." (citation omitted)).
6        Moreover, "[t]he district court may not uncritically accept the number of hours
7  claimed by the prevailing party, even if actually spent on the litigation, but must, in
8  order to award fees based on them, find that the time actually spent was reasonably
9  necessary."  Carson v. Billings Police Dep't, 470 F.3d 889, 893 (9th Cir. 2006)
10 (internal quotation marks and footnotes omitted).  Furthermore, "in cases where a
11 voluminous fee application is filed in exercising its billing judgment the district court is
12 not required to set forth an hour-by-hour analysis of the fee request.  Rather, . . . when
13 faced with a massive fee application the district court has the authority to make
14 across-the-board percentage cuts either in the number of hours claimed or in the final
15 lodestar figure as a practical means of trimming the fat from a fee application."
16 Deukmejian, 987 F.2d at 1399 (citations and internal quotation marks omitted).  In
17 addition, "firms that would justify high hourly charges presuppose particular familiarity
18 and expertise, which should reduce the time needed to do the work."  Ackerley
19 Comms. v. City of Somerville, 901 F.2d 170, 172 (1st Cir. 1990) ("We can only
20 speculate that the inordinate amount of time given to these tasks, in light of counsels'
21 capability and the substantial work that preceded the appeal, stemmed from the heat
22 and excitement of litigating an interesting First Amendment case[.]" (citation and
23 internal quotation marks omitted)).
24 **B. ANALYSIS**
25       **1. PRELIMINARY ISSUE: SOME OF DEFENDANTS' ARGUMENTS LACK MERIT**
26       Even though the Court concludes that Defendants have presented meritorious
27 arguments justifying a reduction in the requested awards, at least two of their
28 arguments must be rejected out of hand.  First, in their Opposition, Defendants claim

that Bingham and Beveridge should have billed hours comparable to solo practitioner Michael J. Lampe. (Opp. at 7 ("[T]he number of hours claimed by the Magan Plaintiffs [represented by Lampe]" is "that which a reasonably competent attorney would have billed in this case.").) The Court rejects this assessment, given that Lampe himself indicated that his billed hours were low because he relied heavily on the work already done by Bingham and Beveridge. (See Docket No. 217 [Lampe Decl.] ¶ 5 ("The Magan Plaintiffs and I also relied heavily on the work of [Bingham and Beveridge] . . . [whose work] vastly reduced the amount of time required by my office.").)

Second, Defendants contend that the hours billed by Bingham and Beveridge are too high because they include time spent representing Plaintiff City of Los Angeles, who Defendants claim is not entitled to an award of attorney fees under 28 U.S.C. § 1988. (Opp. at 7-9.) Defendants point out that the billing records submitted by Bingham and Beveridge do not identify the number of hours spent representing the City and, accordingly, claim that "it is reasonable to infer that **substantially all** of the hours claimed were spent on the City's representation." (Opp. at 8 (emphasis added).) In its October 2007 Order, the Court already implicitly rejected this argument by finding that the existence of a purported private fee arrangement between Individual Plaintiffs and the City had no bearing on Individual Plaintiffs' entitlement to attorney's fees. (Docket No. 205 [10/25/07 Order] at 4.)

The Court therefore turns to the specific requests and its assessment that the requested fees are excessive.

### 2. NUMEROUS REDUCTIONS ARE WARRANTED

In the following discussion, the Court tracks the analytical framework provided in the Bresee Declaration, which the Court found to be thorough and convincing.[3]

---

[3] Gary A. Bresee, a partner at Barger & Wolen LLP with 20 years of litigation and trial experience (Bresee Decl. ¶¶ 1, 3), reviewed the Bingham and Beveridge time entries and recommends reducing the fee request by $899,366. (Bresee Decl. ¶ 66.)
In response to the Bresee Declaration, Individual Plaintiffs submitted a competing expert (continued...)

### a. Excessive Pleading Preparation

Bingham and Beveridge spent a significant amount of time preparing their pleadings:

i. **Preparing complaint**: 228.9 hours (Bingham); 509.7 hours (Beveridge); 738.6 hours (total). This works out to more than 19 40-hour weeks and more than 25 hours a page to prepare a complaint that alleged many of the same claims that the City of Los Angeles had already pursued in state court litigation over the preceding seven years. (Opp. at 1; see also Bresee Decl. ¶ 18.) Even assuming that the lawyers started entirely at square one, the total amount of time allegedly billed to this task is shockingly excessive and must be reduced.

ii. **Opposing motions to dismiss**: 117.4 hours (Bingham); 318.9 hours (Beveridge); 436.3 hours (total). As a former trial lawyer and billing partner, the Court finds this figure to be extraordinarily high. Motions to dismiss focus on the allegations of a complaint, raise purely legal questions, and should be handled with a reasonable degree of efficiency, a quality not reflected in the amount of hours charged to this task.

iii. **Preliminary injunction motion**: 391.7 hours (Bingham); 1,273.3 hours (Beveridge); 1,665 hours (total). The 1,665 hours spent on Individual Plaintiffs' preliminary injunction motion were duplicative, as the preliminary injunction motion presented similar arguments set forth in Individual Plaintiffs'

---

[3](...continued)
declaration with their Reply, the Williams Declaration. Defendants sought ex parte relief to strike the Williams Declaration, arguing that it should have been submitted with Individual Plaintiffs' moving papers. (Docket No. 238 [Ex Parte Application].) While the Court denied Defendants' application for failure to meet the standard for ex parte relief (Docket No. 242 [Order]), the Court gives little weight to the Williams Declaration because (1) Individual Plaintiffs' requested fees are excessive on their face; and (2) the Court finds that the Bresee Declaration is more compelling.

opposition to Defendants' motion to dismiss.  (See Opp. at 2; see also Bresee Decl. ¶ 20.)

iv. **Opposing intervener motions**: 30 hours (Bingham); 195.1 hours (Beveridge); 225.1 hours (total).  The Beveridge firm's total billing on this matter is particularly out of line with the relatively straightforward nature of the issues presented.

v. **Motions for summary judgment**: 415.1 hours (Bingham); 559.8 hours (Beveridge); 974.9 hours (total).  Individual Plaintiffs' Motion for Summary Judgment was limited to the issue of preemption under the California Integrated Waste Management Act, which had already been comprehensively briefed and ruled upon by this Court.  Individual Plaintiffs, nevertheless, spent almost 1,000 hours briefing the cross-motions for summary judgment.  (Opp. at 7:1-6, 14:10-15:11; Bresee Decl. ¶ 33.)  No persuasive reason is given for the expenditure of such an extraordinary amount of time.

vi. **Conclusion**: Bresee calculated that Individual Plaintiffs' "pleading preparation" work totaled $633,307.50 ($248,649 for Bingham; $383,658 for Beveridge), and recommends a "conservative 35%" reduction in these requested fees.  (Bresee Decl. ¶ 34.)  However, Bresee reached this conclusion before Beveridge reorganized and submitted its data in the categories set forth above.  The reorganized data now establishes a total of 4,039.9 hours billed for the tasks described above, of which 2,856.8 hours (70%) were billed by Beveridge, and 1183.1 hours (30%) by Bingham.  Thus, Beveridge billed $1,085,584 (2,856.8 x $380) for these tasks, and Bingham billed $467,324.50 (1183.1 x $395).  In light of this new information, the Court agrees that a 35% reduction in "pleading preparation" hours billed is a proper ***starting point*** and is permissible under relevant Ninth Circuit authority.  See Deukmejian, 987 F.2d at 1399.  However, the Court concludes that a higher percentage should be applied to Beveridge because of its disproportionately

-8-

higher billing on each of these tasks, which is not justified on the basis of anything the Court has reviewed in this record. In short, the Court concludes that it would be inequitable to Bingham to reduce its billings by the same percentage applied to Beveridge, although the Court notes that Bingham charges a slightly higher blended rate. Accordingly, Bingham's requested fee award for "pleading preparation" will be reduced by 25%; Beveridge's fee award will be reduced by 35%. In dollar terms, the Court orders the reduction of Bingham's fees for pleading preparation by $116,831.13, and Beveridge's requested fee award by $379,954.40.

### b. Excessive Conferences

Due in large part to the number of attorneys and assistants (25 individuals in several different geographic locations) staffed on this case, Bingham and Beveridge held an excessive number of conferences to keep each other apprised of the status of this case. (Bresee Decl. ¶ 36.) Bresee opines that a full 21% of Bingham's time "was related to either inter-office (between the firms) or intra-office conferencing." (Bresee Decl. ¶ 37; see also id., Ex. E [Bresee Summary Chart].) Bresee, a seasoned litigator (Bresee Decl. ¶ 3), states that he has "never seen such a high percentage of billed time attributable to conferences" (Bresee Decl. ¶ 40). Accordingly, Bresee recommends a 50% reduction in hours associated with conferences. (Bresee Decl. ¶ 41.) The Court agrees that a 50% reduction is reasonable and appropriate in this case. See, e.g., Guckenberger v. Boston Univ., 8 F. Supp. 2d 91, 100-01 (D. Mass. 1998) ("The primary cause of the overbilling was over-conferencing. The time sheets are replete with conferences among co-counsel. These revealed near-constant bi-coastal efforts to coordinate case 'strategy' and 'status.'. . . [J]ust as there can be too many cooks in the kitchen, there can be too many lawyers on a case."). The Court concludes, however, that the reduction in excessive pleading preparation captures much of the duplication in this area, and thus will not further separately reduce the bill for excessive conferences.

### c. Multiple Attendance by Attorneys

Duplication of work resulted from multiple lawyers attending hearings, conferences, and other matters in this case. See Democratic Party, 388 F.3d at 1286 ("[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." (footnote omitted)). For example, on the hearing for Defendants' motion to dismiss, three Bingham attorneys and four Beveridge attorneys prepared for the hearing, and five of these attorneys attended the hearing. (Bresee Decl. ¶ 42.) The same duplicative activities occurred for the hearing on Individual Plaintiffs' preliminary injunction motion (Bresee Decl. ¶ 43), and for the cross-motions for summary judgment (Bresee Decl. ¶ 44).

Bresee calculated that the total hours billed for the preparation and attendance at these hearings was $125,879.50. (Bresee Decl. ¶ 45; see also id., Ex. E [Bresee Summary Chart].) The Court concludes that 60% of these hours should be reduced. This amounts to a reduction of $75,527.70, or a $29,696.10 reduction for Bingham and a $45,831.60 reduction for Beveridge.

### d. Excessive Research Hours

Bingham and Beveridge billed $417,730 (or 23% of the total fees) on research. (Bresee Decl. ¶ 46; see also id., Ex. E [Bresee Summary Chart].) The Court concludes that this amount is excessive, particularly given that Bingham and Beveridge were retained due to their expertise in environmental law litigation. (See, e.g., Bruner Decl. ¶ 5 (describing Bingham and Beveridge as "two premier environmental law firms").) See Ackerley, 901 F.2d at 172 ("[F]irms that would justify high hourly charges presuppose particular familiarity and expertise, which should reduce the time needed to do the work.").

Furthermore, these excessive research hours dealt not only with environmental law issues in which Bingham and Beveridge are well-versed, but also with basic civil procedure standards. For example, several Bingham and Beveridge

1  attorneys spent significant amounts of time researching issues such as the "standard
2  for a preliminary injunction." (See Bresee Decl. ¶¶ 47-48; see also Second Supp.
3  Slaughter Decl., Ex. A [Timesheets] at A-36-37.)
4       The Court adopts Bresee's recommendation that Bingham's and Beveridge's
5  research hours should be reduced by 30%. (Bresee Decl. ¶ 49.) Accordingly,
6  Bingham's requested fee award for relating to research activities is reduced by
7  $22,242.45, and Beveridge's requested fee award is reduced by $103,076.55.

8                          **e. "Transient Billers"**
9       Bresee recommends that the Court reduce Bingham's fee request by
10  $21,093.00 and Beveridge's fee request by $9,515.00 on the ground that these fees
11  were incurred by "transient billers" (Bresee Decl. ¶¶ 52-53), whom Bresee
12  characterizes as timekeepers whose billing "result[ed] in little or no benefit to the client
13  or case" because they were very briefly involved in the case (see Bresee Decl. ¶ 50).
14  The Court disagrees with Bresee's assessment given that (1) he does not actually
15  dispute the reasonableness of the hours expended or the hourly rates of these
16  individuals; and (2) he instead takes issue with these individuals' limited appearance
17  in the case, but cites no support for the proposition that an individual's reasonable
18  work in a case is not compensable if he appears in the case for only a brief period.
19  (See Bresee Decl. ¶¶ 50-53.) Accordingly, the Court awards Bingham and Beveridge
20  those fees associated with the purported "transient billers."

21                       **f. Clerical and Documentation Activities**
22       Time spent on clerical activities should not be billed at an attorney or paralegal
23  rate. See Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) ("It is appropriate to
24  distinguish between legal work, in the strict sense, and investigation, clerical work,
25  compilation of facts and statistics and other work which can often be accomplished by
26  non-lawyers but which a lawyer may do because he has no other help available.
27  Such non-legal work may command a lesser rate. Its dollar value is not enhanced just
28  because a lawyer does it." (citation and internal quotation marks omitted)); see also

-11-

1  Doran v. Vicorp Restaurants, Inc., 407 F. Supp. 2d 1120, 1125 (C.D. Cal. 2005)
2  (Selna, J.) ("[C]lerical work should be compensated at appropriate rates [here, $30/hr]
3  for that type of work regardless of who performs the tasks.").
4       Bresee highlights several tasks performed by attorneys and paralegals that
5  are clerical tasks and which should not have been billed at attorney and paralegal
6  rates.   While the Court agrees with the general proposition that truly ministerial tasks
7  should not be billed at premium rates, tasks such as preparing binders, entering
8  documents into databases, and organizing case materials may nonetheless involve
9  the exercise of insight and discretion that requires legal training.  (Bresee Decl. ¶¶ 55-
10  56; see also id., Ex. E [Bresee Summary Chart].)  Accordingly, the Court rejects this
11  proposed fee reduction on the record now before it.

          **g.  Excessive Fees on Fees**

13       Although Bingham and Beveridge are entitled to an award of fees on fees
14  (fees for litigating their attorney's fees), the hours they expended for fees on fees were
15  excessive.  Individual Plaintiffs' present Motion for Attorneys' Fees is their ***third***
16  attempt to obtain fees.  This Court never ruled on Plaintiffs' first Motion for Attorneys'
17  fees (Docket No. 88 [12/6/06 Mot.]) because the fee issue was put on hold pending a
18  Supreme Court decision regarding whether a party could be considered a "prevailing
19  party" if it obtained a preliminary injunction.  (See 10/25/07 Order at 1-2.)  After
20  Individual Plaintiffs were successful in their Motion for Summary Judgment and final
21  judgment was entered in their favor, they moved for attorney's fees a second time.
22  (Docket No. 198 [9/24/07 Renewed Mot.].)  This Court denied that Motion without
23  prejudice because Plaintiffs had failed to provide ***any*** documentation supporting their
24  fee request.  (10/25/07 Order at 4-5.)  Furthermore, the Court noted that Individual
25  Plaintiffs' initial Motion for Attorneys' Fees (Docket No. 88) similarly failed to provide
26  any documentation in support of their fee request.  (10/25/07 Order at 5.)  On these
27  bases, the Court concludes that Individual Plaintiffs should not be awarded any fees
28  on fees for their first and second motions for attorney's fees because of the insufficient

-12-

1  briefing done in support thereof. Accordingly, the Court reduces Bingham's fees-on-
2  fees request by $31,007.50 and Beveridge's fees-on-fees request by $164,745.50.
3  (See Bresee Decl. ¶ 62; see also id., Ex. E [Bresee Summary Chart].) These
4  amounts deduct Bingham's and Beveridge's work on their first two fee motions and
5  reflect only the work done on their Third Motion for Attorneys' Fees.

6      In addition to the above deductions, the Court also **DENIES** Bingham's and
7  Beveridge's supplemental fees on fees request. (See Second Supp. Bruner Decl. ¶¶
8  4-5 (requesting additional $56,169.00 in fees on fees); Second Supp. Slaughter Decl.
9  ¶ 4 (requesting additional $87,607.00 in fees on fees).) Bingham and Beveridge failed
10 to present their Third Motion for Attorneys' Fees in a readable, consistent manner,
11 obligating the Court to request further briefing so that the Court could analyze whether
12 the requested fees were duplicative or excessive. (Docket No. 241 [5/15/08 Order].)
13 Bingham and Beveridge now seek even more fees associated with fixing the problems
14 with their Third Motion for Attorneys' Fees, which the Court concludes is
15 inappropriate.

16            **h. Vague Entries**

17     A number of Bingham and Beveridge time entries are accompanied only by
18 vague descriptions, such as "review correspondence." (E.g., Bresee Decl. ¶ 64.)
19 "The fee applicant bears the burden of documenting the appropriate hours expended
20 in the litigation and must submit evidence in support of those hours worked."
21 Rowland, 39 F.3d at 1449. The Court concludes that Individual Plaintiffs fail to meet
22 their burden of documentation for these vague time entries and, accordingly, reduces
23 Bingham's requested fee award by $4,210.50 and Beveridge's requested fee award
24 by $891.00 on account of these vague entries.

25            **i. Costs**

26     Individual Plaintiffs request costs in the amount of $77,351.49. (See Bruner
27 Decl., Ex. B [Bingham Costs Chart]; Slaughter Decl., Ex. D [Beveridge Costs Chart];
28

1  see also Second Supp. Slaughter Decl. ¶ 4 (requesting an additional $148.59 in
2  costs).[4]
3        Under § 1988, "the prevailing party ***may*** recover as part of the award of
4  attorney's fees those out-of-pocket expenses that would normally be charged to a fee
5  paying client." Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005) (internal quotation
6  marks and citation omitted and emphasis added).  Furthermore, a court may deny
7  recovery for costs when the prevailing party fails to sufficiently explain what those
8  costs are.  See Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 974-75 (D.C. Cir.
9  2004) (Tatel, J.) ("We will also deny recovery for search service expenses, document
10 delivery services, and publications because Role Models has failed to explain what
11 these categories comprise."); see also Muldrow v. Re-direct, Inc., 397 F. Supp. 2d 1, 5
12 (D.D.C. 2005) (reducing request for costs under § 1988 because there were "several
13 undocumented or unreasonable requests" for which plaintiff did not provide "sufficient
14 justification" and where the court could not "discern from plaintiff's records whether
15 these costs were necessary and reasonable").[5]
16       In the present matter, Individual Plaintiffs provide two cost charts (Bruner
17 Decl., Ex. B [Bingham Cost Chart]; Slaughter Decl., Ex. E [Beveridge Cost Chart]) that
18 list the general category of the cost (i.e., "overnight/express delivery" ($2,963.89),
19 "photocopy" ($4,091.30), "travel" ($4,204.95), or "Westlaw research" ($16,099.64)).
20 (See, e.g., Bruner Decl., Ex. B [Bingham Cost Chart].)  In their moving papers,
21 Individual Plaintiffs provide insufficient justification for these costs, and there is no
22 way for the Court to discern whether these costs were necessary and reasonable.
23 Defendants dispute these costs in their Opposition and provide specific objections.

---

[4]There is a slight discrepancy in requested costs, but it is a moot point given that the Court denies the request for reimbursement of costs.

[5]Role Models was not a § 1988 case, but dealt instead with attorney's fees under the Equal Access to Justice Act. This difference does not affect the analysis above, which stands for the general proposition that while costs may be awarded, they must be sufficiently substantiated.

-14-

(See Opp. at 21-25.)  Individual Plaintiffs' Reply discusses some of these costs (see Supp. Bruner Decl. ¶¶ 54-58; see also Supp. Slaughter Decl. ¶¶ 43-49), but other costs remain unsubstantiated and, in any event, Plaintiffs should have presented this information with their motion papers.  Accordingly, (1) having failed to show that their cost request is sufficiently justified, reasonable, and necessary; and (2) because the Court has the discretion to award costs under § 1988, see 42 U.S.C. § 1988(b), the Court **DENIES** Bingham's and Beveridge's request for costs in their entirety.

## III.

## CONCLUSION

Based on the foregoing, the Court reduces the attorney's fee awards as follows:

| Item | Bingham | Beveridge |
| --- | --- | --- |
| Total Fees Sought | $659,264.00 | $1,321,711.00 |
| Excessive Pleading Preparation Reduction | $116,831.13 | $379,954.40 |
| Excessive Conferences | $0.00 | $0.00 |
| Multiple Attendance | $29,696.10 | $45,831.60 |
| Excessive Research Hours | $22,242.45 | $103,076.55 |
| Transient Billers | $0.00 | $0.00 |
| Clerical & Documentation | $0.00 | $0.00 |
| Fees on Fees | $31,007.50 | $164,745.50 |
| Vague Entries | $4,210.50 | $891.00 |
| TOTAL FEE AWARD | $455,276.32 | $627,211.95 |

///

///

///

1  As set forth in greater detail above, the separate request for fees in connection
2  with this Third Motion for Attorneys' Fees is **DENIED**.   Furthermore, the request for
3  costs is likewise **DENIED.**

5  IT IS SO ORDERED.
6  DATED:   September 3, 2008

   _____
   Judge Gary Allen Feess
   United States District Court